# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1848.

## SHATTUCK *v.* GILSON.

A warrant to a non-commissioned officer of a militia company is competent evidence of his due election to the office.

Such warrant, countersigned by the clerk of a company, in the regular discharge of his duties as clerk, is evidence of his due election in an action to which he is a party.

The insertion of the name of a person in company orders, is evidence that his name was upon the roll of the company at the date of the orders.

The enlistment of a party in a volunteer company does not exempt him from the effect of such enrolment, unless notice thereof is left with the clerk of the company from which such enlistment is made, according to the Rev. Stat. ch. 84, § 4.

COMPLAINT, by the plaintiff, as clerk of the ninth company of infantry in the fifth regiment of New Hampshire militia, being the company in Brookline, to collect a fine of the defendant, alleged to be a private in said company, for his non-appearance at a company training on the nineteenth of May, A. D. 1846.

· The plaintiff gave in evidence a warrant to himself as first sergeant of the company, dated April 30, 1846, signed by the captain, and countersigned by the plaintiff, as clerk, and he took the oath of office May 2, 1846.

The warrant appeared to be recorded upon the company's books by the plaintiff. No other appointment of the plaintiff appeared in the company's books, but he proved by Mr.

Jefts that he was one of the commissioned officers of said company, and that the officers, at a meeting, appointed him clerk or first sergeant of said company, a day or two before the warrant was issued, but no written evidence of the appointment ever existed, except the warrant.

It appeared that one Melendy was first sergeant of said company in 1845. His warrant was not countersigned by any clerk, but was signed by all the commissioned officers of the company. Melendy testified that the last of March or the first of April, 1846, he resigned his office as first sergeant, and returned his warrant to the captain.

To all which evidence the defendant objected, as inadmissible, and as insufficient to show that the plaintiff was clerk of said company, but the same was admitted, subject to the defendant's objections.

The roll of the company was in evidence, and purported to be a roll of the company, as revised in April, 1846, and afterwards corrected from time to time. The defendant's name was borne upon that roll, but it was objected by him that it did not appear whether his name was, in fact, upon said roll before, or at said training, or when it was placed there.

Company orders were issued for said training, bearing date, May 14, 1846. The defendant's name was in said orders, and he was duly warned to appear.

To all which the defendant objected, as not showing that he was duly enrolled in said company. But the same was admitted, subject to the exception.

The defendant had resided in Brookline, and he gave evidence tending to show that in 1845 he went to Nashua to reside, and that August 29, 1845, he enlisted in the Nashua Guards, a military company, by signing the book of enlistment.

The organization and extent of the Nashua Guards did not appear, further than that it was shown by parol that the company had in fact existed for some years, and the com-

mission of the captain of the company was produced, sign-
ed by the Governor of this State, dated March 30, 1843, and
sworn May 8, 1844, and another officer was commissioned
in like manner in 1847.

The defendant did duty in the Nashua Guards in 1845,
and that fall he returned to Brookline and resided there in
1846. He did not do duty in the Nashua Guards in 1846,
but in an independent company in Brookline. The captain
of the Nashua Guards testified that the defendant came to
him in the winter of 1845-6, and asked if he could be re-
leased from doing duty in the Nashua Guards, provided he
performed military duty in the Brookline Guards, and was
told that he might be so released.

The officers of the Nashua Guards owned about one half
of the uniforms for the members of the company. The
company owned the remainder, except five or six belonging
to individuals.

The defendant had a right to one of these uniforms, and
to take the same and keep it for his own use, returning it in
the fall to the armory, to be kept till spring. In this way
the defendant was uniformed and equipped for the Nashua
Guards, and so appeared, when he met with the company.

The plaintiff objected to the above evidence relating to
the Nashua Guards, and the defendant's enlistment therein,
as inadmissible, and as insufficient, and as no answer to the
complaint. And the court directed a verdict for the plain-
tiff, subject to the opinion of the superior court upon the
admissibility and sufficiency of the above evidence, and the
defendant moved for a new trial.

*Farley,* for the plaintiff.

*Sawyer & Stevens,* for the defendant.

WOODS, J. The first question which presents itself, re-

lates to the evidence of the appointment of the plaintiff to the office which entitles him to bring this action.

The Revised Statutes, ch. 93, § 8, prescribes the mode in which such officers shall be elected, and prescribes, further, that they " shall have warrants, under the hand of the captain, countersigned by the clerk, and recorded in the orderly book of the company." Such a warrant the plaintiff had. It was under the hand of the captain, and countersigned and recorded by himself, as the clerk of the company. The effect of this is to make his own acts evidence in his own favor, and to enable him, by his own certificate, to make proof of his title. But this is a necessary, and by no means an unusual consequence, and generally takes place in cases where the recording officer derives his authority from the constituency whose doings he records. And it was held in *Briggs* v. *Murdock*, 13 Pick. 305, that it was competent for a town clerk to make a record of his own appointment and qualification, from the necessity of the case, and that such record, or a copy, was competent evidence.

The effect of the warrant itself, when regularly authenticated, became the subject of discussion, in the case of *The State* v. *Leonard*, 6 N. H. Rep. 435 ; and it was there held, that it was in the nature of a commission, and as such, the proper evidence of the official character of the party holding it. The case was like the present, except that the law at that time required the warrant to be signed by the colonel, which it now requires to be signed by the captain, and must be regarded as having settled the precise question here presented. The necessary conclusion therefore is, that the warrant was executed and recorded in due form, and constituted the proper evidence that the plaintiff held the office of first sergeant, by virtue of which he performed the acts which laid the foundation of this action, and in virtue of which he seeks to maintain it. If there were any proper evidence that Melendy held the office in 1845, this warrant operates to remove him, and to create the vacancy ; the office being

held only during the pleasure of the commissioned officers. Besides, there was parol proof of his resignation, which is not an official act, like a removal, requiring to be proved by the record.

It is objected, further, that no competent proof was offered of the due and seasonable enrolment of the defendant. The roll of the company, given in evidence, purported to be the roll of the company, as revised in April, 1846, and afterwards corrected from time to time. The defendant's name was borne upon the roll; but it is objected, that it does not appear whether his name was in fact upon the roll before, or at the time of the training, or when it was placed there; and that for anything that appears, it may have been placed there since.

Company orders, however, were issued for the training, which bore date, May 14, 1846, and the defendant's name was in the orders, and he was duly warned to appear at the time and place of training.

In *Gale* v. *Currier*, 4 N. H. Rep. 169, it was held that the roll of the company of militia is the best evidence of the enrolment of its members, and the insertion of the name of a private, in the orders issued to warn the company, has been decided to be *prima facie* evidence of his enrolment. *State* v. *Wilson*, 7 N. H. Rep. 543. And it is provided by chapter 77, section 3 of the Revised Statutes, that every captain, with the assistance of the clerk, shall enrol each person by law liable to do military duty, who shall reside within the bounds of his company, and that the insertion of the name of such person in any company orders, or its annexation thereto, shall in all cases be evidence that such person is duly enrolled. No doubt, then, can exist, that by force of the statute provisions, united and in accordance with the law as decided in the cases referred to, the evidence offered in this case was competent and sufficient evidence of the enrolment of the defendant, at least as early as the fourteenth day of May, 1846, the date of the orders to warn the

company, if not as early as the month of April, 1846. Here was evidence of the time, as well as of the fact of the enrolment.

It did appear, then, by competent proof, that the name of the defendant was on the roll prior to the time of training, and seasonably, to wit, on the day on which the orders for the training were issued. This objection, therefore, cannot prevail.

Was the defendant shown to have been a member of the Nashua Guards, or of the Brookline Guards, at a time to have exempted him from the effects of this enrolment?

The case finds that there was no notice of his enlistment in either of those companies, to the captain of the ninth company, or to the captain of any other company. This notice is distinctly required in all cases, in order to discharge a private from liability to duty in a militia company. Rev. Stat. ch. 84, § 4. There must therefore be

*Judgment on the verdict.*